**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**CYNTHIA MORRISSETTE-BROWN**

      **Plaintiff,**

**v.**

**MOBILE INFIRMARY MEDICAL CENTER,**

      **Defendant.**

**CIVIL ACTION NO. 04-0069-CB-C**

## ORDER

On June 29, 2006, this action was tried to the court, sitting without a jury. This is an employment discrimination case wherein Plaintiff claims Defendant discriminated against her in violation of Title VII of the Civil Rights Act by refusing to accommodate her religious beliefs as a Seventh-day Adventist. Plaintiff brings an action against her former employer alleging a failure to accommodate her religious practices in violation of section 2000e-2(a)(1) of Title VII, 42 U.S.C. §2000e-2. That section makes it unlawful "for an employer–(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's ... religion... ." Specifically, plaintiff alleges that she was terminated from her position for her refusal to work on the Sabbath as observed by her religion and that defendant failed to make a reasonable accommodation of her religion. Based upon the evidence submitted at the trial, the court makes the following findings of fact.

### Findings of Fact

Plaintiff is a Seventh Day Adventist and thus observes Sabbath from sunset on Friday to sunset on Saturday. It is against the tenets of her religion for her to engage in secular labor on the

Sabbath.  Plaintiff had worked for defendant in a number of positions over twelve years.  However, during that time she was not observant of the Church's prohibition on Sabbath work.

On May 1, 2002, plaintiff began work in defendant's Rotary Rehabilitation Hospital as a unit secretary.  At the time she accepted the job, she was aware that it required work on weekends. When she was interviewed for the position by Laura Hobson, plaintiff did not mention any religious objection to working the Friday/Saturday shifts but rather indicated that she did not have a problem working weekends.

There are five full-time positions for unit secretary in that department.  The Rehabilitation Unit utilizes a rotating scheduling system for unit secretaries under which the full-time unit secretaries alternate working every other weekend. "Flex" staffers[1] are used to fill out the schedule on weekends and on the weekday shifts when a full time staff person takes off.

In the Fall of 2002, plaintiff became 'fully committed' to the Seventh Day Adventist Church and began at that time to observe the Sabbath more strictly.  On October 18, 2002, plaintiff did not show up for her scheduled weekend shift and subsequently submitted a note to her supervisor indicating her religious conflict.  Her supervisor informed her that she could arrange a voluntary swap with co-workers for the shifts which conflicted with her Sabbath observations.  Plaintiff found an employee willing to take her Saturday shifts[2] but did not make a swap arrangement for her Friday

---

[1]  Workers in flex positions do not have a set schedule and are not guaranteed a full-time schedule.  They require weekend work, but are given some flexibility as to weekday shifts, and are used on an as needed basis.  For some positions, such as the flex CNA position offered to plaintiff in February 2003, plaintiff could satisfy her weekend requirement with work on Sunday.

[2]  Plaintiff originally arranged a swap with Sandra French for plaintiff's Saturday shift but, after one such swap in October 2002, Ms. French ceased to be available.  Contrary to suggestions made by plaintiff prior to trial, the court finds no basis to believe that defendant interfered with this arrangement.  Plaintiff thereafter made a similar arrangement with Blondie Page to cover plaintiff's Saturday shifts and this arrangement continued through the remainder of plaintiff's work in that department.

shifts.  Rather than work on the Sabbath, plaintiff 'called in' and did not work the Friday evening shifts.

After she did not work on October 18, 2002, plaintiff was informed by her supervisor that, if she would not commit to work as scheduled, she should seek another position with the employer that did not require weekend work.  Her supervisor asked plaintiff to agree to work her shifts as scheduled, though she indicated plaintiff could arrange another swap with a co-worker.  Plaintiff was informed that she could be disciplined for failing to work her scheduled shifts, including termination.

On October 31, 2002, plaintiff attended a meeting with Jane Bruton and Ms. Hobson at which she was given a verbal warning that she must work as scheduled, but was encouraged to find another position into which to seek a transfer.  Defendant repeatedly requested that plaintiff work her scheduled shifts or find a replacement, and repeated warnings that she could be terminated if she failed to do so.[3]  However, defendant did not discipline plaintiff until she was suspended on January 22, 2003.  When plaintiff called in her absences, often other employees covered her duties; a unit secretary from the previous shift would be required to work an additional four hours to cover the busy period, for which defendant incurred additional costs in  overtime pay.  On other occasions, the rehabilitation unit operated with only one secretary.

In mid-January, one unit secretary was on medical leave and a second one was due to commence medical leave.  On January 21, 2003, plaintiff had another meeting with Ms. Hobson and Mr. Hanson at which she was advised that she could either work her shift as scheduled or take an involuntary "leave of absence" while she sought another position.  Plaintiff refused to work the

---

[3]  These warnings include a meeting with Randy Stembridge and Jim Hanson on November 5, 2002 and a call from her supervisor on January 7, 2003.

scheduled shifts and was suspended by defendant for a period of thirty days but was allowed to use her accrued vacation time to provide for an income during that period.  Plaintiff had not worked in the position long enough to qualify for a leave of absence but this requirement was waived by defendant.  Plaintiff was also told that she could transfer to another job although normally transfers were not allowed in the first twelve months of a new job.

Plaintiff applied for  two other positions with defendant during her involuntary leave. Plaintiff was not qualified for either position.  One month later, on February 23, 2003, plaintiff called her supervisor and informed her that she would be back at work the next day.   On February 24, 2003, plaintiff returned to work and met with Laura Hobson and James Hanson where she was told that if she did not cover her shift she would be terminated.  Plaintiff refused and thereafter left the hospital.  She did not seek any other jobs with defendant after that date.

However, prior to the completion of administrative steps to terminate plaintiff, defendant attempted to reach plaintiff several times by telephone to offer her a position as a flex CNA, but received no response.  On February 27 and 28, 2003, defendant mailed two letters to plaintiff advising her that it wanted to offer her a position.  The position afforded the same rate of pay per hour, and defendant states that it was likely to offer 40 hours per week on a flexible schedule based on the volume of patients but that was not guaranteed.  The position would also allowed plaintiff the flexibility of not working on Friday night or Saturday.   The position did not offer benefits as had her position as unit secretary.

A representative from plaintiff's church responded on her behalf and plaintiff requested that all further communication be made through that representative.  Defendant corresponded with the representative but continued to send copies of all correspondence to plaintiff.  Plaintiff never responded to the offer of the flex CNA position. On July 7, 2003, defendant advised plaintiff in a

letter that it would assume that plaintiff was voluntarily resigning her employment if she did not respond to the job offer by July 17, 2003.  When no response was received by that date, plaintiff's status was administratively altered from "active" to "inactive."

<u>Analysis</u>

Plaintiff's claim of religious discrimination is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1).  A plaintiff "may utilize two theories in asserting religious discrimination claims: disparate treatment and failure to accommodate."  *Hellinger v. Eckerd Corp.*, 67 F. Supp.2d 1359, 1362 (S.D.Fla. 1999)(citing *Chalmers v. Tulon Co. of Richmond,* 101 F.3d 1012, 1017-18 (4th Cir.1996), <u>cert. denied</u>, 522 U.S. 813 (1997)).  Title VII imposes a duty on employers to "reasonably accommodate to an employee's ... religious observance or practice" unless such an accommodation would cause "undue hardship on the conduct of the employer's business."  42 U.S.C. §2000e(j).  To establish a *prima facie* case of failure to accommodate an employee's religious beliefs, plaintiff must demonstrate a) that she had a *bona fide* religious belief which conflicted with a requirement of her employment; b) that she informed her employer about the belief and the conflict, and c) that she was discharged or disciplined for failing to comply with the conflicting employment requirement.  See *Lubetsky v. Applied Card Systems, Inc.,* 296 F.3d 1301, 1306 n.2 (11th Cir. 2002)(collecting cases from other circuits); see also *Ansonia Bd. Of Educ. v. Philbrook*, 479 U.S. 60, 63 (1986).  "In formulating such an accommodation, both the employer and the employee should remain flexible, with an eye toward achieving a mutually acceptable adjustment."  *Cosme v. Henderson*, 287 F.3d 152 158 (2nd Cir. 2002).  However, "any reasonable accommodation by the employer is sufficient to meet its accommodation obligation."  *Philbrook*, 479 U.S. at 68.  Plaintiff is not entitled to a particular accommodation; the employer is not required to offer several options nor to show that the alternative accommodations offered by the plaintiff

would result in an undue hardship. *Id.* at 68. The statutory inquiry ends with a determination that the employer offered any reasonable accommodation. *Id.*

Once plaintiff has established a *prima facie* case, the employer must demonstrate that it has offered a reasonable accommodation or, alternatively, that any potential accommodation would cause the employer undue hardship. *Beadle v. Hillsborough County Sheriff's Dept.*, 29 F.3d 589, 592 (11th Cir. 1994). However, the issue of the extent of hardship on the employer only arises where the employer claims that it is unable to offer any accommodation. *Philbrook*, at 68-69 (citing *Hardison*, 432 U.S. at 74-75 and n.9). "To aid lower courts in their analysis of these cases, the Supreme Court has provided some guidance by generally defining 'undue hardship' as any act that would require an employer to bear greater than a '*de minimis* cost' in accommodating an employee's religious beliefs." *Beadle*, 29 F.3d at 592 (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)).

Defendant challenges plaintiff's *prima facie* showing on the basis that her purported religious belief against working on the Sabbath was not *bona fide*. The term "religion" is defined in the statute to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate ... employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j) (1994). Defendant questioned plaintiff concerning a footnote from "Seventh Day Adventists Believe,"[defendant's Exhibit 52] which sets forth the doctrine of the Church. Footnote 50 establishes an exception for doctors and nurses in a hospital setting where the patients' health is at risk if they do not do so. Leaving undecided the purely theological question of whether this provision would allow plaintiff, a support staff person, to work in a hospital on a regular basis on the Sabbath, the court finds that plaintiff was unaware of this exception. Moreover, as supported

by her minister's understanding as set forth in a letter he wrote in support of her position, [Plaintiff's Exhibit 3] her work violated her good faith understanding of her religious duties.   The court finds that plaintiff had a bona fide religious belief that conflicted with her required work schedule thus plaintiff has established the first prong of her prima facie case.   In addition, the court finds that plaintiff Brown informed her employer of her belief and the conflict no later than October 2002 when she requested that she be allowed to swap shifts with a fellow employee to cover her Saturday shift.  Brown followed up with a written notice on October 31, 2002.[4]

The court also finds that plaintiff satisfied the third prong by being disciplined for failing to comply with the work schedule.  The court finds that the imposition, against plaintiff's will, of a 30-day unpaid leave was a disciplinary action, rather than an accommodation as claimed by defendant. Plaintiff was told prior to that time that she must either work her shifts, find another unit secretary willing to swap shifts with her, or find another job within the Mobile Infirmary system.   She was told when she was put on leave that she should look for another position within the system and that, if she came back, she should  be prepared to cover the work as scheduled or she would face termination.  While defendant argues that there was no provision in its procedures for suspending an employee for a thirty-day term as a disciplinary measure, defendant has pointed to no provision which would provide for leave without pay against an employee's will for any non-disciplinary purpose.

However, the court does not find that plaintiff was terminated by defendant on February 24,

---

[4]The court finds that plaintiff did not inform her supervisor of a religious conflict with weekend work at the time of the interview for the position in May, 2002.  The court further finds that plaintiff was asked during the interview whether moving from a position which involved weekend work every third weekend to one requiring every second weekend was a problem and responded that it was not.

2003, as she claims.  At the meeting with Mr. Hanson and Ms. Hobson, plaintiff informed them that she had not found another job and was not prepared to work on the Sabbath if scheduled.  Hanson told plaintiff and her minister that he was going to recommend termination. Plaintiff left, believing that she would be terminated.  Instead, shortly after the meeting and before any final administrative action on the termination recommendation, the Director for Employee Relations, William Stembridge, learned that there was a flex CNA position available.  Plaintiff had worked as a CNA several years before, and defendant was willing to hire her for that position despite her need for additional training.  He had Hanson call plaintiff, but she did not return the calls.  On February 27, 2003, Ms. Hanson wrote her a letter mentioning that there was another position available.  On February 28, 2003, Stembridge wrote to plaintiff, formally offering her the flex CNA position. Plaintiff did not respond to any of these overtures.  The termination was never finalized and, though plaintiff reasonably presumed when she left the Infirmary that she would be terminated, that presumption should have been called into question almost immediately by the phone messages, and was definitely countered by the letter from Stembridge dated just a few days later, offering her another transfer to a specific job.  However, though plaintiff remained on the rolls of employees, she was no longer called upon to work and had no position, paycheck or benefits.  As the court finds, *infra,* that defendant offered a reasonable accommodation, this finding makes little practical difference.  To reach the reasonableness of defendant's offered accommodations, it is sufficient that plaintiff has presented a prima facie case.

Defendant made several accommodations to plaintiff's religious conflicts.  Not only did defendant maintain a neutral shift rotation schedule, it allowed plaintiff to arrange a shift swap with her co-workers for her Friday night and Saturday afternoon shifts and made available the schedules of the other employees.  See *Beadle v. City of Tampa*, 42 F.3d at 636-37; *Beadle v. Hillsborough*

*County Sheriff's Dept.*, 29 F.3d 589, 593 (11th Cir. 1994)("[V]oluntary swaps instituted by employers within neutral rotating shift systems constitute reasonable accommodations under Title VII.")  Also, defendant offered plaintiff the opportunity to transfer within the hospital system, despite the fact that plaintiff had not been in her current position long enough to qualify for a transfer under the hospital's policies.  Moreover, defendant did not terminate or otherwise discipline plaintiff for a period of approximately three months despite the fact that plaintiff continued  to fail to come to work for her scheduled Friday shifts.   Finally, it offered plaintiff a transfer to another position at the same rate of pay, but without benefits, despite her need for additional training.  The court finds that each of these accommodations were reasonable.

Because defendant offered plaintiff at least one accommodation that the court finds to have been reasonable, the court need not address whether any alternative offered by plaintiff was also reasonable.  *Philbrook*, at 68-69 ("As *Hardison* illustrates, the extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship.")

<u>Conclusion</u>

For the foregoing reasons, the court finds in favor of the defendant on all claims.  A separate judgment shall issue.

**DONE** this the 14th day of July, 2006.

**s/ Kristi K. DuBose**_____
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**